IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **OMAR RAHMAN,** : | |
|          **Plaintiff,** : | |
| : | |
| v. : | **CIVIL ACTION NO. 18-1898** |
| : | |
| : | |
| **MELONI HANDBERRY,** *et al.*, : | |
|          **Defendants.** : | |

## MEMORANDUM OPINION

**Rufe, J.**                                                                                             **August 25, 2020**

Plaintiff Omar A. Rahman, who initially proceeded *pro se* but is now represented by counsel, alleges that his Fourteenth Amendment rights were violated when his parental rights were involuntarily terminated by the City of Philadelphia's Department of Human Services. Defendant Althea Udo-Inyang, Assistant Solicitor for the City, has moved to dismiss all claims against her.

### I.     BACKGROUND[1]

Plaintiff is an inmate at SCI Smithfield.[2] His parental rights were terminated while he was incarcerated. Plaintiff alleges that at an "adjudicatory and dispositional hearing" before the Court of Common Pleas of Philadelphia, Family Court Division, his daughter, T.N.R., was committed to the care and custody of the Department of Human Services ("DHS").[3] At that hearing, Plaintiff alleges, the court ordered the Community Umbrella Agency ("CUA") to create

---

[1] The facts in this section are taken from the Amended Complaint and assumed true for purposes of this Motion to Dismiss.

[2] Am. Compl. [Doc. No. 15] ¶ 3.

[3] *Id.* ¶ 7.

a "single case plan" and submit a "parent locator" for Plaintiff.[4] Plaintiff alleges that Defendant Julie Carter, the CUA social worker assigned to T.N.R.'s case, did neither, and that her supervisor, Defendant Meloni Handberry, neglected to ensure that Carter complied with the court order.[5]

Despite Carter and Handberry's failure to comply with the court order, Defendant Althea Udo-Inyang, the attorney of record representing DHS, filed a petition for involuntary termination of Plaintiff's parental rights.[6] Defendant Udo-Inyang filed the petition without prior notice to Plaintiff and without providing reunification services.[7]

At an initial termination hearing, Plaintiff alleges, the court again ordered DHS and CUA to coordinate a meeting to create a case plan for Plaintiff within twenty days.[8] No case plan meeting was held for Plaintiff.[9] At a subsequent hearing, Plaintiff's parental rights to T.N.R. were terminated by order of the family court.[10] Plaintiff alleges that during the proceedings, Defendant Udo-Inyang knew of CUA's non-compliance with the court orders and fraudulently represented to the Court that the criteria for filing the parental termination petition had been met, resulting in the termination of Plaintiff's parental rights.[11] Plaintiff further alleges that Defendant Udo-Inyang conspired with CUA social workers to refuse reunification services to deliberately

---

[4] *Id.*

[5] *Id.* ¶¶ 8-9.

[6] *Id.* ¶ 10.

[7] *Id.*

[8] *Id.* ¶ 11.

[9] *Id.* ¶¶ 12-13.

[10] *Id.* ¶ 15

[11] *Id.* ¶¶ 14, 26.

prevent "Plaintiff from fulfilling the necessary requisites to ensure that he maintained [parental] rights."[12]

Plaintiff brought this action against the City of Philadelphia, the Community Umbrella Agency, and Defendants Carter and Handberry, claiming a violation of his procedural due process rights under § 1983 and § 1985(3).[13] The Court granted the City of Philadelphia's motion to dismiss all claims against it.[14] Plaintiff then filed an Amended Complaint that named only Defendants Carter, Handberry, and Udo-Inyang.[15]

Service-of-process difficulties plagued this case from that point. Prior to the filing of the Amended Complaint, the Court ordered Community Umbrella Agency to provide addresses for its employees, Defendants Carter and Handberry, as Plaintiff had been unable to serve either of them successfully.[16] CUA never complied with that Order and failed to appear at a show-cause hearing on its noncompliance.[17] To assist Plaintiff, a *pro se* inmate, with achieving service of process on all defendants, the Court then referred the case to the Prisoner Civil Rights Panel for possible appointment of counsel. Counsel was appointed for Plaintiff but has not filed a Second Amended Complaint or a supplemental response to the pending Motion to Dismiss.[18] At this

---

[12] *Id*. ¶ 30.

[13] *Id,* at ¶¶ 16–31. Plaintiff also named the Philadelphia Department of Human Services as a defendant, and the Court dismissed DHS as a defendant on the grounds that it is not a legal entity separate from the City of Philadelphia. Doc. No. 5.

[14] Doc. No. 13.

[15] Doc. No. 15. The Amended Complaint also named the City of Philadelphia in the caption, but the text of the Amended Complaint did not raise any claims against the City, so the Court determined that the City would remain terminated as a defendant and the case would proceed only as to the three individual defendants. Doc. No. 16.

[16] Doc. No. 14.

[17] Doc. No. 20.

[18] *See* Doc. No. 40.

point, Udo-Inyang is the only currently-named Defendant to have been served, and appeared in the case through counsel.[19]

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may seek dismissal of an action for failure to state a claim upon which relief may be granted. To survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[20] Additionally, there must be "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element" of a claim.[21]

In evaluating a Rule 12(b)(6) motion, the court must consider only those facts alleged in the complaint, accepting the allegations as true and drawing all logical inferences in favor of the non-moving party.[22] To overcome a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."[23] The complaint must set forth "direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory."[24] When faced with a *pro se* litigant, however, the court has a duty to interpret the pleadings liberally.[25] "However inartfully pleaded," a *pro se* complaint must be held to "less stringent standards that formal pleadings drafted by lawyers."[26] The Third Circuit has

---

[19] *See* Doc. No. 19.

[20] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

[21] *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (citing *Twombly*, 550 U.S. at 556) (internal quotation marks omitted).

[22] *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994).

[23] *Twombly*, 550 U.S. at 570.

[24] *Id.* at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)) (internal quotation marks omitted).

[25] *Higgs v. Att'y Gen. of the U.S.*, 655 F.3d 333, 341 (3d Cir. 2011).

[26] *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

also determined that if a complaint is vulnerable to dismissal for failure to state a claim, a curative amendment must be permitted, unless an amendment would be inequitable or futile.[27] The Court is mindful that although Plaintiff is now represented by counsel, he filed the Amended Complaint and his response to Defendant Udo-Inyang's Motion to Dismiss *pro se*.

### III.   DISCUSSION

#### A. 42 U.S.C. § 1983 Claim

Plaintiff alleges that his procedural due process rights were violated when Defendant Udo-Inyang petitioned to have his parental rights terminated prior to being provided a state case plan and reunification services.[28] Plaintiff also alleges that he received notice of the termination hearing only after the petition was filed.[29] Defendant argues that the termination hearings afforded Plaintiff sufficient process and that in any event she is entitled to absolute immunity in her prosecutorial capacity as a city attorney prosecuting a dependency petition.

Because Defendant Udo-Inyang is entitled to absolute immunity, the Court need not address the merits of Plaintiff's procedural due process allegations. Like prosecutors, who have absolute immunity in initiating prosecution and presenting the state's case,[30] child welfare advocates receive absolute immunity in carrying out their duties on behalf of the state in "preparing for, initiating, and prosecuting dependency proceedings."[31] Courts use a functional approach to determine whether officials acting in a prosecutorial capacity are entitled to absolute

---

[27] *Rhett v. New Jersey State Superior Court,* 260 F. App'x 513, 515 (3d Cir. 2008).

[28] Amend. Compl. [Doc. No. 15] ¶ 25.

[29] *Id.* at ¶10.

[30] *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976).

[31] *Ernst v. Child & Youth Services of Chester County*, 108 F.3d 486, 495 (3d Cir. 1997) (granting immunity to child welfare workers because 1) their duties are analogous to prosecutors; 2) public policy considerations for immunity mirror those for prosecutors; 3) safeguards exist to combat unconstitutional actions during dependency hearings).

immunity.[32] Thus, child welfare advocates are entitled to absolute immunity for formulating and presenting recommendations to the court in the course of dependency proceedings.[33]

All of Plaintiff's allegations against Defendant Udo-Inyang concern actions she took in her prosecutorial capacity as a child welfare advocate. Plaintiff alleges that Defendant Udo-Inyang chose to pursue the petition to terminate Plaintiff's parental rights prior to affording him a state plan and reunification services.[34] Plaintiff also alleges that Defendant fraudulently represented to the court that she had met the requirements for filing the petition.[35] Both of these functions occurred while Defendant was preparing, initiating and prosecuting the termination of Plaintiff's parental rights in the context of a judicial proceeding.[36] While Defendant Udo-Inyang would not be entitled to absolute immunity for "improper investigative actions taken outside the context of a judicial proceeding,"[37] Plaintiff nowhere alleges that Defendant Udo-Inyang acted outside the bounds of her role. As a result, Plaintiff's § 1983 claim against Defendant Udo-Inyang will be dismissed.

### B. 42 U.S.C. § 1985(3) Claim

"Where a plaintiff cannot maintain a § 1983 claim for deprivation of rights, he is precluded from proceeding with a § 1985 claim based on the same allegations."[38] Plaintiff's failure to plead sufficient facts to support his § 1983 claim to show a violation of procedural due process precludes him from proceeding with his § 1985(3) claim.

---

[32] *Id.*

[33] *Id.*

[34] Am. Compl. [Doc. No. 15] ¶ 25.

[35] *Id.* ¶ 6.

[36] *Id.* ¶ 4.

[37] *Hatfield v. Berube*, 714 F. App'x 99, 104 (3d Cir. 2017).

[38] *Mathews v. Wash. Mut. Bank, FA*, No. 05-100, 2006 U.S. Dist. LEXIS 56738, at *38 (E.D. Pa. Aug. 14, 2006).

Additionally, in order to prevail on a conspiracy claim under § 1985(3), a plaintiff "must show that there is some racial or other invidiously discriminatory animus underlying the actions of the alleged conspirators."[39] Plaintiff has not pled any facts indicating that the Defendants' actions were discriminatory as opposed to procedurally improper. For both these reasons, Plaintiff's § 1985(3) claim will be dismissed.[40]

### IV.   CONCLUSION

For the reasons set forth above, Defendant Udo-Inyang's Motion will be granted and all claims against her will be dismissed. The Court will grant leave to amend in view of the fact that Plaintiff is now represented by counsel. If Plaintiff wishes to proceed against Defendants Carter and Handberry, who still have not been served, he must effect service of process promptly. An appropriate Order follows.

---

[39] *Id.*

[40] Defendant Udo-Inyang's Motion to Dismiss did not discuss Plaintiff's § 1985 claim, but the Court determines that it is appropriate to address that claim as it is plainly without merit. *See* 28 U.S.C. § 1915A.

7